UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

Compeer Financial, PCA,

                Plaintiff,

vs.

Sunwold Farms, Inc., Sunterra Farms Iowa, Inc., and Lariagra Farms South, Inc.,

Case No. 25-CV-04044

**PLAINTIFF COMPEER FINANICAL, PCA' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO AVOID MANDATORY MEDIATION**

    Plaintiff Compeer Financial, PCA ("**Compeer**") respectfully submits this Memorandum of Law in Support of its Motion to Avoid Mandatory Mediation.

## FACTS

    The substantive facts that outline the basis for this dispute are detailed in Compeer's Complaint filed with the Court and are incorporated herein by reference.[1]

## ARGUMENT

    In diversity cases, federal courts apply substantive state law. *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 746 F.3d 594, 595 (8th Cir. 2007) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Further, when dealing with a state's mandatory mediation statute, district courts adhere to the procedures enumerated within the statute. *See Rutter v. Carroll's Foods Midwest, Inc.*, 50 F.Supp.2d 876, 881 (N.D. Iowa 1999) ("[t]he court agrees that waiver of mediation is

---

[1] Capitalized terms not defined herein are given the same meaning as given in the Complaint.

contemplated by Iowa Code Ch. 654B… in which the mandatory mediation procedures of Iowa Code § 654B.3 can be waived.").

I. **The Court Should Grant Compeer's Motion to Avoid Mandatory Mediation Because the Time Delay Required for Mediation Pursuant to S.D.C.L. § 54-13-10 Would Cause Compeer to Suffer Irreparable Harm.**

S.D.C.L. § 54-13-10, generally requires a creditor to "file a request for mandatory mediation with the director of the agricultural mediation program" before it commences action to enforce a debt against agricultural property or agricultural land. However, a creditor may forgo mandatory mediation if "a court determines after notice and hearing, that the time delay required for mediation would cause the creditor to suffer irreparable harm because there are reasonable grounds to believe that the borrower may waste, dissipate, or divert agricultural property or that the agricultural property is in imminent danger of deterioration." S.D.C.L. § 54-13-10. Case law does not define "irreparable harm" in the context of S.D.C.L. § 54-13-10, but case law does discuss "irreparable harm" in the context of preliminary injunctions. Generally, "[h]arm is… irreparable where… it cannot be readily, adequately, and completely compensated with money." *Strong v. Atlas Hydraulics, Inc.,* 855 N.W.2d 133, 140 (S.D. 2014) (quoting *Knodel v. Kassel Twp.,* 581 N.W.2d 504, 509 (S.D. 1998)) (internal quotations omitted). Further, "[i]n the context of a request for preliminary injunctive relief, 'irreparable harm is measured in terms of the harm arising during the interim between the request for an injunction and final disposition of the case on the merits[.]'" *Hedlund v. River Bluff Estates, LLC,* 908 N.W.2d 766, 773 (S.D. 2018) (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 40 (2d Cir. 1995)).

Here, reasonable grounds exist to believe that the Defendants will waste, dissipate, or divert agricultural property or that agricultural property is in imminent danger of deterioration, and thus, cause Compeer and the approximately 110,000 head of swine irreparable harm. Defendants have

already fraudulently overdrawn on the multiple lines of credit by orchestrating a sophisticated and fraudulent check-kiting scheme. As a result of the check-kiting scheme, Sunwold has drawn $14,001,385.86 on the Sunwold Line of Credit, even though the credit limit was $7,000,000.00. (Compl., ¶ 64) and, Sunterra has drawn $18,943,468.35 on the Sunterra Line of Credit, even though the credit limit was $500,000.00. (Compl., ¶ 65). The Defendants are heavily indebted to Compeer, CWB, and likely other financial institutions to the point where Defendants are unlikely to completely compensate Compeer.

Additionally, Compeer fears that its collateral will deteriorate without immediate action. Defendants do not have access to funds to care for the approximately 110,000 head of swine located in barns across South Dakota. Therefore, in order for Compeer to prevent further harm it must take immediate action. Upon information and belief, Defendants lack the funds to care for the 110,000 head of swine in their possession. (Compl., ¶¶ 45, 50, 56, 58, 64-68). Defendants have failed to make necessary payments for the support of the swine including the failure to pay barn rent and the failure to pay feed suppliers. (Compl., ¶ 97). Defendants have already defrauded Compeer, CWB, and likely several other creditors through the check-kiting scheme. The Defendants' indebtedness is immense, and they have no incentive to continue their ween-to-finish swine operations. If Compeer does not have the ability to pursue legal claims and put a receiver into place to care for the 110,000 head of swine, the pigs face starvation and deterioration. The loss Compeer will experience through the deterioration of its collateral cannot be readily, adequately, or completely compensated with money, and thus, the harm is irreparable. Therefore, since there is reasonable belief that Defendants will fraudulently divert, waste, or cause Compeer's approximately 110,000 swine collateral to deteriorate, causing irreparable harm, the Court should

grant Compeer's Motion to Avoid Mandatory Mediation. Compeer must take immediate action and take possession of its collateral before it suffers further harm.

**II.    Alternatively, the Court Should Grant Compeer's Motion Because Mandatory Mediation in this Instance is Impractical.**

S.D.C.L. § 54-13-11 states that "[u]nless the borrower waives mediation, the director of the agricultural mediation program shall promptly send a mediation meeting notice to the borrower and to *all creditors*…" (emphasis added). Due to the nature of the fraudulent check-kiting scheme, Defendants have defrauded several creditors, including the National Bank of Canada, previously Canadian Western Bank ("CWB"). (*See* Compl., ¶ 24, Ex. A). CWB filed an application for receivership in the Court of King's Bench of Alberta against the Defendants on March 17, 2025, ("Application") requesting the appointment of an Interim Receiver to investigate the check-kiting scheme. (*Id.*)

Based upon the information available at this time the total number of creditors is unknown. Even if all the creditors were known, S.D.C.L. § 54-13 would require interstate and international creditors to participate in mediation. This would be impractical. Further, another creditor has already commenced an action in a separate jurisdiction in a foreign country, which would force Compeer, and any receiver Compeer is requesting this Court to appoint, to fall behind in the judicial process if required to go through mandatory mediation. Without all of the necessary creditors and the complete scope of the extensive fraud at issue, it will be difficult, if not impossible, for Compeer to successfully complete the mandatory mediation.

Additionally, Defendants have already proven to be non-cooperative. In connection with the Application filed in Canada, CWB filed a memorandum of law in support of its application, CWB noted that "[i]t initially appeared that the Sunterra Group's management was willing to work collaboratively with Lender to address the Impugned Transactions…" (Affidavit of Jennifer

Lurken in Support of Motion to Avoid Mandatory Mediation ("Lurken Aff."), Ex. 1 at ¶ 44.). After conversations with CWB, Sunterra agreed to share information and execute a forbearance settlement agreement. (*Id.* at ¶ 46). However, Sunterra quickly reneged on its promises. According to CWB, "[t]he Sunterra Group has refused to provide the Compeer Spreadsheets or the necessary consents so that the Lender and Compeer can discuss and share information concerning the Impugned Transactions. The parties have also been unable to come to terms regarding the Revised Draft Forbearance Agreement." (*Id.* at ¶ 49). Defendants have likewise refused to permit Compeer to communication substantively with CWB and have refused to provide transparency about their financial condition or Compeer's exposure to additional losses. (Complaint ¶ 37.)

Not only would the 110,000 head of swine suffer irreparable harm due to the time delay of mediation under S.D.C.L. § 54-13-10, but mediation in this instance is impractical and futile. The nature of the Defendants' check-kiting scheme involved several creditors, both interstate and international. Thus, having all the creditors appear for mediation is impractical, and mediation without all the creditors present will not be productive. Further, Defendants have already proven to be non-cooperative. Therefore, the court should grant Compeer's Motion to Avoid Mandatory Mediation.

## **CONCLUSION**

Based on the foregoing, Compeer respectfully requests that the Court grant its Motion to Avoid Mandatory Mediation pursuant to S.D.C.L. § 54-13-10 because the time delay will cause

Compeer to suffer irreparable harm and there are reasonable grounds to believe that the Defendants will waste, dissipate, or divert agricultural property subject to Compeer's security interest.

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. § 549.211.

Dated this 25th day of March, 2025.

*/s/ Jennifer G. Lurken*
Jennifer G. Lurken    #4371
GISLASON & HUNTER LLP
2700 South Broadway
P. O. Box 458
New Ulm, MN  56073-0458
Phone:  507-354-3111
Fax:  507-354-8447
Email:  jlurken@gislason.com

*Attorneys for Plaintiff Compeer Financial, PCA*

4932-1578-5006.v1