**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | |
|---|---|
| COMPEER FINANCIAL, PCA,<br><br>PLAINTIFF,<br><br>VS.<br><br>SUNWOLD FARMS, INC., SUNTERRA FARMS IOWA, INC., AND LARIAGRA FARMS SOUTH, INC.,<br><br>DEFENDANTS. | CASE NO. 25-CV-04044<br><br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO AVOID MEDIATION |

Defendants Sunwold Farms, Inc., Sunterra Farms Iowa, Inc., and Lariagra Farms South, Inc., LLC ("Defendants"), through counsel, hereby submits the following response to Plaintiff's Motion to Avoid Mediation, Doc. 3 (the "Motion"). As explained in more detail below, Plaintiffs have misled this Court by the missing and misleading facts in its Verified Complaint and failed to meet its burden of proof. Plaintiff's Motion must be denied so that Defendants can proceed with their right to mediation under South Dakota law.

**ARGUMENT[1]**

Compeer Financial, PCA ("Plaintiffs" or "Compeer") failed to comply with SDCL § 54-13-10 which requires "*mandatory* mediation." (emphasis added). SDCL § 54-13-10 states:

> A creditor *desiring to commence an action or a proceeding in this state to enforce a debt* totaling fifty thousand dollars or greater against agricultural land or agricultural property of the borrower or to foreclose a contract to sell agricultural land or agricultural property or to enforce a secured interest in agricultural land or agricultural property or pursue any other action, proceeding or remedy relating to agricultural land or agricultural property of the borrower *shall file a request for mandatory mediation with the director of the agricultural mediation program*. No creditor may commence any such action or proceeding

---

[1] Defendants hereby incorporate the facts and arguments from all hearings and filings herein.

1

> until the creditor receives a mediation release as described in this chapter, or the debtor waives mediation or until a court determines after notice and hearing, that the time **delay required for mediation would cause the _creditor_** to suffer irreparable harm because there are reasonable grounds to believe that the borrower may waste, dissipate, or divert agricultural property or that the agricultural property is in *imminent* **danger of deterioration**. Dismissal of a bankruptcy proceeding, abandonment by a bankruptcy trustee, release or relief from a bankruptcy stay, or release or termination of a receivership proceeding shall have the effect of a mediation release. Any debt that is less than fifty thousand dollars may be mediated through a voluntary mediation if a request is made and accepted by both borrower and creditor.

As such, South Dakota law requires mediation with the director of the agricultural mediation program before, among other things, pursuing *any* action, proceeding or remedy relating to agricultural land or agricultural property of the borrower. There is no question that this matter involves Plaintiff's pursuit an action against Defendants is to enforce their alleged debt which Plaintiff also claims is over fifty thousand dollars. Mediation, therefore, is not a choice under South Dakota law—it is a mandated requirement and a condition precedent to bringing this action. *See Walsh v. Larsen*, 2005 SD 104, ¶¶12-14, 705 N.W.2d 639, 642-43 (holding that the mandatory mediation requirement is a condition precedent to bringing an action and not jurisdictional in nature).[2]

As noted above, there are certain *limited* exceptions to this mandatory mediation. SDCL § 54-13-10. To avoid mediation, the Plaintiff *must* show "that the time delay required for mediation would cause the creditor to suffer irreparable harm because there are reasonable grounds to believe that the borrow may waste, dissipate, or divert agricultural property or that the agricultural property is in imminent danger of deterioration." *Id.*[3] While there is no

---

[2] Defendants are not arguing jurisdiction and that this matter be dismissed. Defendants merely want this Court to uphold their right to mandatory mediation under South Dakota law and their rights under the Farm Credit Act.

[3] The Plaintiff does not, and indeed cannot, argue under the other two exceptions to mandatory mediation set forth in Chapter 54-13-10, which include (i) a mediation release and (ii) waiver by the debtor of the requirement.

2

caselaw interpreting "irreparable harm" as used in Chapter 54-13-10, courts have long interpreted such phrase in the context of issuing preliminary injunctions. In fact, the Plaintiff likewise relies on preliminary injunction precedent in its brief supporting its Motion in setting forth the standard for "irreparable harm." (Doc. 8, p.2).

"To demonstrate irreparable harm, a plaintiff must show that the harm is 'certain, great and of such imminence that there is a clear and present need for equitable relief.'" *Cowherd v. Leidholt*, 5:19-CV-05027-KES, 2020 WL 1234820, at *1 (D.S.D. Mar. 13, 2020) (quoting *Gard v. Dooley*, No. 4:14-cv-04023-LLP, 2014 WL 4243586, at *1 (D.S.D. Aug. 26, 2014)). A plaintiff must show *actual* harm that is *substantial* and that "resulting *from the alleged infringement*." *Id.* (quoting *Gard*, 2014 WL 4243586, at *1) (emphasis added); *see also Chlorine Inst. Inc. v. Soo Line R.R.*, 792 F.3d 903, 915 (8th Cir. 2015) (noting that "[a]ppellants' assertion" that a harm would "inevitably result" was "too speculative" to show irreparable harm). It has long been known that such relief is not appropriate "[w]hen there is an adequate remedy at law . . . ." *Watkins v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citation omitted). "[T]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Cowherd*, 2020 WL 1234820, at *1 (quoting *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996))

Plaintiff fails to meet the burden of irreparable harm to avoid mediation for several reasons. First, economic losses that are identifiable and recoverable do not constitute irreparable harm. *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir 2020); *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Plaintiff's alleged harm is related directly to measurable economic losses that Plaintiff has identified in its Verified Complaint. (Doc. 1-2, ¶¶ 50, 45, 56, 58; *see also* Doc. 1-2, Exs. C, D,

3

E, G, H, I, K, L, M (security agreements and financing statements which arguably provide Plaintiff with an adequate remedy at law and its request for waiver, therefore, inappropriate). Because Plaintiff's alleged losses are economic losses that are identified by Plaintiff in its Verified Complaint, Plaintiff cannot show irreparable harm under the law.

Second, Plaintiff cannot prove that any harm resulted from *Defendants'* alleged infringement. Plaintiff cannot meet this burden because the harm to the pigs and other interested parties is the result of *Plaintiff's* conduct. Plaintiff states it became aware of "significant activity" on the accounts and "made aware of" the alleged check kiting on February 10, 2025. (Doc. 1-2, ¶24). Thereafter, Plaintiff alleges it had a video call with Ray Price and later "informed Mr. Price in writing that Compeer was exercising its right to terminate check-writing privileges but would consider permitting checks written for necessary operational expenses." (Doc. 1-2, ¶27). Plaintiff further alleges in its Verified Complaint that although it didn't need to, "Compeer has continued to provide funds that are necessary to the care and feeding of the pigs located in South Dakota." (Doc. 1-2, ¶37).

In an effort to throw the blame of Plaintiff's self-inflicted wounds onto Defendants, Plaintiff drastically misconstrues Defendants' extraordinary efforts to continue operations and take care of the pigs. For example, Plaintiff, under oath, states that Defendants did not provide Plaintiff with transparency and information as requested. Plaintiff misleads this Court entirely. *See* Affidavit of Anna Limoges in Support of Defendants' Response to Plaintiff's Motion to Avoid Mediation and Defendants' Response to Plaintiff's Motion for Ex Parte Application to Appoint a Receiver, ¶1, Ex. 1 ("Emails"). Below is a timeline of events where Defendants provided Plaintiff with information, as well as made promises to assist in the continued operations of the Defendants' business:

4

- 2.19.25 – Email from Ray providing Borrowing Base Information

- 2.19.25 – Ray emails Lariagra's pig sales

- 2.20.25 – Ray following up after meeting asking logistics of how payments can be made and from which account. "Sunterra Farms Iowa charges management fees to Lariagra and that [$91,000] deposit was made to support the Iowa State bank cash needs." Steve says Rays information is acceptable and just needs to "know what checks are being written for and for what, with invoices if sizeable." Compeer promises it will turn around payments within 48 hours of the requests. Ray provides Compeer with the formula of how the pigs are valued.

- 2.20.25 – Ray provides weekly report and asks if this is the information they are looking for.

- 2.24.25 – Ray provides money flow information and asks for approval on payments and moving funds. Approval of moving funds around and Compeer transferred an additional $110k as discussed the week before and Compeer asking "how may pigs do you expect are coming?"

- 2.26.25 – Ray provides financial information and states to Compeer that it was "[g]ood to hear that the visits to the barns have gone well."

- 2.27.25 – Meeting with Ray, Art, and Steve Grosland. Ray also emails and asks about a $91,443.56 check from Lariagra into the Sunterra Farms account at Iowa state bank to cover payroll. Steve asks what is he missing. Ray explains they had to pay $20,000 at the border that was unexpected and attaches a statement from the account.

5

- 2.27.25 – Another email with requested information. Ray provides the depreciation schedule and how the management fee paid by Lariagra to Sunwold is determined. Ray also provides a list of expenses and sales re: the NAE.
- 3.3.25 – "Short term Animal Care Funding" email from Steve Grosland. Compeer makes proposal with Defendants to care for the animals.
- 3.4.25 – "Follow up" emails re: deal on short term animal care funding – discussion of "critical items" took place.
- 3.5.24 – Lots of information provided by Ray regarding what needs to be paid for feed.
- 3.6.25 - Webex meeting on March 6, 2025 with Defendants and Steve Grosland – Defendants request payments for pigs. "Compeer will honor the drafts as indicated."
- 3.6.2025 – List of barns provided by Ray.
- 3.7.2025 – List of approved checks provided by Ray. The majority of these checks were approved by Compeer, but almost $600,000 were denied after Compeer provided approval.
- 3.10.25 – Ray informs Plaintiff that the method of Tyson's payments changed. Tyson added Compeer to the payments and will be paying by check instead of ACH.
- 3.13.25 – Request for money to pay various companies. Numerous invoices provided by Ray to Compeer to back up request.

- 3.13.25 – Steve Grosland confirms there was an agreement for Compeer to pay for a number of pigs and asks for more information.
- 3.13.25 – Ray emails information and barn sheet as well as how they value the pigs.
- 3.17.25 – Compeer promises to pay. "We are going to be sending CWB the wire for the pig payment today."
- 3.17.25 – Ray emails bank account statements and a summary. Compeer stopped responding to emails 3.17.25.
- 3.19.25 – Ray asks for a draft check for Lariagra to cover the approved checks and says they have not seen a wire for the pig payment. No response.
- 3.25.25 – Ray emails most recent inventory of pigs owned by Sunwold and Lariagra. No response.

(Emails).

Plaintiff's alleged harm is caused by its own conduct. Numerous courts have held that self-inflicted harm cannot be "irreparable." *See Swift Power Servs., LLC v. N. Country Constr. & Rentals, Inc.*, Case No. 4:12-cv-108, 2013 WL 12085489, at *4 (D.N.D. Jan. 7, 2013) ("Courts have determined that a movant for a preliminary injunction does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted."); *Panchero's Franchise Corp. v. Excelsior Bay Inv. Grp.*, Case No. 09-2166, 2009 WL 10711630, at *5 (D. Minn. Aug. 25, 2009) ("Self-inflicted harm does not constitute irreparable injury."). *See also Salt Lake Trib. Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable . . . ."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828,

7

Case 4:25-cv-04044-ECS   Document 16   Filed 03/27/25   Page 8 of 9 PageID #: 139

839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.").

As noted above, the alleged harm to Plaintiff is self-inflicted and manufactured by the Plaintiff—they control the "purse strings" and the Defendants cannot pay any expenditure without Plaintiff's permission. If permitted to pay barn rent and other amounts, there is no threat of harm to health and welfare of the pigs under the Defendants' care. Plaintiff agreed to allow time for the Defendants to propose a forbearance agreement and time to potentially restructure debt under the Farm Credit Act, which time periods *have not yet expired*. Plaintiff gave the Defendants two weeks to reach agreement on the terms of a forbearance agreement, and at the time of filing its motions in South Dakota Circuit Court, the Defendants still had *over a week* to make a proposal in response to the Plaintiff's last counter. Moreover, on February 19, 2025, Plaintiff informed the Defendants that they each had a right to restructuring of their loan under the Farm Credit Act for 48 days, which time period expires *more than two weeks from now*. Plaintiff's motions and related papers are simply an effort by Plaintiff to exert additional leverage over the Defendants without basis in any real emergency not of Plaintiff's own doing. There are no reasonable grounds to believe that Defendants are wasting or doing anything with regards to the agricultural property.

Further, there are no reasonable grounds to belief that any property is in *imminent* danger. While there is no caselaw in South Dakota regarding what "imminent" danger means under these circumstances, it is notable that the word "imminent" is used. Black's Law Dictionary further defines "unavoidable danger" as "1. Inescapable danger. 2. A danger that is unpreventable." Black's Law Dictionary (12th ed. 2024). The imminent danger here is not

inescapable by Plaintiff as noted by its numerous agreements with Defendants. The imminent danger here is not "unpreventable" as Plaintiff is in control of the results.

Plaintiff cannot prove irreparable injury or an imminent danger because any harm is self-inflicted. Plaintiff has failed to meet its burden.

## CONCLUSION

Under South Dakota Law and the Farm Credit Act, the Defendants are entitled to explore a possible resolution or restructuring of the indebtedness. Those negotiations should be allowed to move forward and, with the help of a mediator, may result in an outcome that is not as draconian as appointment of a receiver with extremely limited notice and with little to no evidence supporting the extreme remedy of avoiding mediation. Because Plaintiff fails to meet its burden to avoid South Dakota law requiring mandatory mediation, Plaintiff's Motion must be denied.

Dated March 27, 2025.

HALBACH | SZWARC LAW FIRM

By: /s/ *Anna M. Limoges*
Alex S. Halbach
Anna M. Limoges
Robert D. Trzynka
108 S. Grange Ave.
Sioux Falls, SD 57104
P: (605) 910-7645
alexh@halbachlawfirm.com
alimoges@halbachlawfirm.com
bobt@halbachlawfirm.com
*Attorneys for Defendants*