UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

Compeer Financial, PCA,

                Plaintiff,              Case No. 25-CV-04044

vs.

Sunwold Farms, Inc., Sunterra
Farms Iowa, Inc., and Lariagra
Farms South, Inc.,

---

## ORDER GRANTING COMPEER FINANCIAL, PCA'S APPLICATION TO APPOINT A RECEIVER

---

The above-entitled matter came before the Court on Compeer Financial, PCA's ("**Compeer**") Motion to Appoint a Receiver Pursuant to SDCL 21-21-6. Based upon the files, records, and proceedings herein, and the arguments of counsel, the Court makes the following Order:

### <u>ORDER</u>

1. For the reasons stated on the record at the hearing on March 27, 2025, Plaintiff is entitled to the appointment of a receiver under Federal Rule of Civil Procedure 66, and on other applicable law.

2. The Court has reviewed the facts and information provided to it and has determined that Compeer's right to and interest in the approximately 110,000 head of swine and the Collateral, as defined in the Complaint, is probably in danger of being lost, removed, or materially injured.

3. The Court has reviewed the facts and information provided to it and has determined that Sunwold Farms, Inc, ("**Sunwold**"), Sunterra Farms Iowa, Inc. ("**Sunterra**"), and Lariagra

Farms South, Inc. ("**Lariagra**" collectively with Sunwold and Sunterra referred to herein as the "**Defendants**") are all insolvent or in imminent danger of insolvency.

IT IS HEREBY ORDERED THAT:

**Appointment of Receiver**

4.    The Court has weighed the factors, as outlined in *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993) and finds that Pipestone Management II, LLC (the "**Receiver**") is qualified to serve as receiver and as an officer of the Court.

5.    The Receiver is hereby appointed as receiver over the Receivership Property (as defined below) wherever situated, for a period commencing on the date of this Order and ending upon termination of such appointment by further Order of this Court.

6.    The Receiver may reserve the right to accept this receivership and may enter into a separate agreement with the parties concerning its exposure to liability.

7.    The Receiver shall not be required to post a bond.

8.    The Receiver shall communicate with and disclose information to Defendants and their authorized agents and representatives, officers, directors, and any third-parties authorized by the Defendants or their officers or directors to receive such information.

**Receivership Property**

9.    "Receivership Property" shall consist of:

   a.    All of the Defendants' personal property described in the security agreements attached to the Complaint filed in the above-captioned matter, including without limitation all of the Defendants' crops, livestock and poultry, feed, seed, etc., accounts and general intangibles, equipment, contract rights, chattel paper, documents, accounts, and general intangibles, accounts receivable arising from the

2

sale of all collateral, association stock, and proceeds from the disposition of the foregoing items, etc.;

b.  All tangible and intangible property used or useable in connection with the Defendants' businesses or income including, without limitation, equipment, furniture, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related thereto, causes of action, drawings, plans, specifications, escrow agreements, and all cash on hand, bank accounts, credit card receipts, bank deposits, security deposits and other cash collateral;

c.  All books, records, accounts, and documents that in any way relate to the Defendants' businesses or income derived therefrom; and

d.  All livestock under the management or care of any of the Defendants that is the property of third parties (collectively, the "**Third Party Livestock**"), including without limitation, The Pork Group, Inc. ("**TPG**") and all personal property necessary for the maintenance and care of such Third-Party Livestock.

10.    The following assets and matters, owned or in the possession of the Defendants (collectively, the "**Excluded Matters**"), however, are specifically excluded from the receivership and shall: (i) remain the sole responsibility of the Defendants, as applicable, and (ii) do not constitute Receivership Property:

a.  Toxic and/or hazardous waste material, including the storage, handling, disposal, and/or clean-up of such toxic and/or hazardous waste material; and

b.  Any pension, profit sharing, 401(k), retirement, health insurance, dental insurance, flexible spending account, or other employee benefit plan.

11.    Any party, or the Receiver acting upon its own initiative, may bring a motion before the Court requesting to add to the estate the Excluded Matters, or any other matters or assets not

previously made part of the Receivership Property. Should the Receiver object to the addition of any assets or matter to the estate, such objection shall be deemed good cause for the Receiver to terminate this Receivership.

**Receiver's Powers and Duties**

12.    The Receiver shall have the following powers which, unless otherwise stated, may be exercised without further order of the Court:

    a.   To collect, control, manage, conserve, and protect the Receivership Property;

    b.   To incur and pay expenses incidental to the Receiver's exercise of the powers or otherwise in the performance of the Receiver's duties;

    c.   To operate and conduct the business of the Defendants and/or any business constituting Receivership Property in the ordinary course of business, including: (i) using, selling, or leasing property or otherwise constituting Receivership Property; (ii) incurring and payment of expenses of the Receivership Property; and (iii) hiring employees and appointing officers to act on behalf of the Receivership Property;

    d.   To collect any information as to the assets, liabilities, equity in, business of, and intellectual property regarding or related to the Defendants, the Receivership Property, or operation of the Receivership Property, including, but not limited to request, any and all account statements, cancelled checks, deposit slips, or other banking records with Plaintiff and any financial institution with which any of the Defendants hold accounts (collectively "Financial Institutions");

    e.   To continue, modify, terminate, or enter into any and all agreements that are necessary or advantageous to the Receivership Property, which may include payment of expenses incurred prior to the appointment of the Receiver, which the Receiver, in its business judgment, deems necessary to preserve, protect, operate, sell the Receivership Property;

    f.   To enter into or modify agreements with creditors of the Defendants to resolve debts previously incurred by the Defendants, or related to Receivership Property;

    g.   To demand, collect, and receive all revenue, income, or proceeds from the operation of the Receivership Property, including, without limitation, all receivables, accounts, profits, rents, charges or fees now due and unpaid or hereafter to become due;

    h.   To enforce or cause the Receivership Property to enforce payment obligations owed to the Receivership Property, including, but not limited to, promissory notes, mortgages, contracts and accounts. To accomplish this purpose, the Receiver may

in its own name or in the name of the Receivership Property initiate any legal proceedings viewed necessary to enforce such payment obligations, including, but not limited to, seeking of equitable relief;

i.  If authorized by an order of the Court, to use, improve, sell, or lease Receivership Property other than in the ordinary course of business, free and clear of liens, claims and encumbrances;

j.  If authorized by an order of the Court, to market, sell, lease, transfer or otherwise dispose of or cause the Receivership Property to market, sell, lease, transfer or otherwise dispose of any or all of the Receivership Property either as a going concern or through a liquidation or other sale process, free and clear of all liens, claims, interests, and encumbrances, (including free and clear of any right(s) of redemption by any party) pursuant to South Dakota law; any activities that would constitute anything other than operations in the ordinary course of business may not be taken by the Receiver unless the Receiver obtains prior approval of the Court;

k.  To apply the Defendants' or Receivership Property endorsements to any instrument received by Receiver in the course of its management of the Receivership Property and execute in the name of the Defendants or the Receivership Property any and all reports and other documents required to be executed in connection with the performance of the Receiver's obligations pursuant to this Order and under applicable law;

l.  To utilize any and all of Defendants' and/or the Receivership Property's existing sales, use, leasing, operating and other licenses and permits;

m.  To operate, or cease operations of, any and all of the affairs of the Receivership Property, either directly and/or indirectly through the employees and agents hired by the Receiver and acting under the Receiver's direction and control, as the Receiver deems prudent;

n.  To investigate, pursue, and compromise and settle any and all claims that the Defendants, Receivership Property, or the Receiver in its capacity as Receiver over the Receivership Property, may have against any third party, including the Defendants' or Receivership Property insiders, directors, officers and owners, and including the Causes of Action;

o.  To compel any person, including without limitation, the Defendants, and any other party, by subpoena pursuant to Rule 45(a) of the South Dakota Rules of Civil Procedure, to give testimony or to produce and permit inspection and copying of designated books, documents, electronically stored information, or tangible things with respect to Receivership Property or any other matter that may affect the administration of the receivership;

p.   To access and control all bank accounts and financial accounts of the Defendants and/or the Receivership Property, together with all funds deposited therein;

q.   To access, obtain, and utilize all electronic login and password information from any third party (including, but not limited to, utility providers, banking institutions, payroll processing services, etc.);

r.   To open new bank accounts in the name of the Defendants and/or the Receivership Property for use by the Receiver or its designee, and/or use existing deposit and checking accounts that the Defendants or the Receivership Property currently maintain and rename such accounts to reflect the interest of the Receiver;

s.   To receive and open all mail for and behalf of the Defendants or the Receivership Property and access and obtain keys for all Post Office boxes for the Defendants and the Receivership Property;

t.   To change the locks, access, and security codes on all entry points of any real property which is part of the Receivership Property;

u.   To obtain and/or maintain appropriate insurance coverages for itself as Receiver and enter into a separate agreement with Plaintiff concerning its exposure to liability;

v.   To obtain insurance for the Receivership Property, including public general liability insurance, worker's compensation insurance, fire and extended coverage insurance, employer's liability insurance, employment practices insurance, liability insurance, non-owned auto umbrella insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Receivership Property; and is authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate; Receiver shall be named insureds on all generally liability policies; notwithstanding anything contrary in this Order, Receiver may cancel any existing insurance policy for the Receivership Property (other than Third Party Livestock) and any refund of premiums shall be paid to the Receiver;

w.   To collect any revenue and income from the operation of the Receivership Property;

x.   To prevent the Defendants, the Receivership Property, or any officers, representatives, agents, successors, and assigns acting on their behalf from accessing or controlling Receivership Property;

y.   To abandon property in the Receivership Property that the Receiver determines is burdensome to preserve or operate, or not of material value, which abandonment shall be effective upon the filing of a notice of abandonment; *provided, however*, the Receiver may not abandon any Third Party Livestock without (i) the prior written consent of the owner of such Third Party Livestock or (ii) further order of the Court on no less than five (5) business days' notice to the owner of any applicable Third Party Livestock;

z.  To retain and employ other professionals, including, but not limited to, legal counsel, accountants, appraisers, temporary employees, or other professionals, to assist or represent the Receiver as the Receiver deems appropriate both with respect to the Receiver's role in this action and any other actions the Receiver may initiate or defend in connection herewith. Any such professional shall be compensated at his or her usual hourly rate from the Receivership Property. The Receiver shall process payment of outstanding fees and expenses to Halbach|Szwarc Law Firm. The Receiver is hereby authorized to retain and employ Spencer Fane, LLP as legal counsel without further order of the Court;

aa.  To take any and all actions the Receiver deems reasonable and appropriate to prevent waste of the Receivership Property and to preserve, secure, manage, maintain, and safeguard the Receivership Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

bb.  To share information with, meet with and, discuss with affected persons, including, without limitation, Compeer, CWB, and any other Financial Institutions and creditors (including trade creditors), as the Receiver deems appropriate, all matters relating to the Receivership Property, and this receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable. Without limiting the generality of the foregoing, the Receiver is hereby authorized and empowered to: (i) share information with Compeer, expressly for the purpose of Compeer assessing, enforcing, or preparing to enforce, any rights or remedies of the Lender; (ii) execute any consent to disclose information, on behalf of the Defendants, as it relates to the Receivership Property; and

cc.  To apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside of South Dakota and the United States; *provided, however,* the Receiver may only market, sell, lease, transfer or otherwise dispose of Third Party Livestock, or any personal property acquired expressly for the maintenance and care of such Third Party Livestock, upon the express written consent of the owner of any such Third Party Livestock.

13.  In order to exercise the authority conferred upon it under this Order, the Receiver is hereby vested with the sole standing power and authority to: (i) execute documents, instruments, and resolutions in connection with any sale or finance transaction; and, (ii) have and obtain access to employee records, reports, communications, and other work product, including without limitation, the authority to sign a petition on behalf the Defendants or the Receivership Property or their officers as appropriate for filing.

14.     The Receiver shall have no responsibility to administer any pension, profit sharing, 401(k), retirement, health insurance, dental insurance, flexible spending account, or other employee benefit plan.

15.     The Receiver shall give notice of the receivership to all creditors and other parties in interest actually known to the Receiver by mail, email, or other means of transmission within 21 days after the time of appointment. The notice of the receivership shall include the date of appointment and the names and addresses of the Defendants, the Receiver, and the Receiver's attorney, if any.

16.     The Receiver will, in connection with its first Monthly Operating Report (as defined below), file an inventory of all property of which the Receiver has taken possession, including all funds in the Receiver's possession, all rents and revenues received by the Receiver. If the Receiver subsequently comes into possession of additional property, the Receiver will file a supplemental inventory with the applicable Monthly Operating Report.

**Taxes**

17.     The Receiver shall be entitled to utilize the tax identification numbers associated with the Defendants or the Receivership Property to the extent permitted by law, or the Receiver may obtain new tax identification numbers. The Defendants shall provide the Receiver with all the tax identification numbers utilized in connection with the operation of the Receivership Property.

18.     This Order is not intended to create a taxable entity. The Receiver shall not be liable for the payment of state, federal, or other taxes on behalf of the Defendants or the Receivership Property that were unpaid at the time of the Receiver's appointment; however, such taxes, if any, may be paid as part of a distribution to the creditors of the Defendants in the amount and to the extent ordered by the Court. The Receiver shall have no obligation to prepare or file state, federal,

or any other tax returns or other tax-related documents on behalf of the Defendants. The responsibility for such tax filings and payments lies exclusively with the officers, directors and/or shareholders of the Defendants.

**Third Party Matters**

19.     All civil legal proceedings of any nature, including, but not limited to, arbitration proceedings, foreclosure actions, default proceedings, governmental actions including tax collection, or other actions of any nature involving: (a) the Receiver, in its capacity as Receiver; (b) any of the Receivership Property, wherever located; (c) the Defendants; or (d) any of the Defendants' and/or Receivership Property's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise, are stayed until further order of the Court, except the Application CWB filed in the Court of King's Bench of Alberta, Canada ("Application") requesting the appointment of FTI Consulting Canada, Inc. ("FTI") as an interim receiver over present and after-acquired bank accounts, monies, funds, receivables, cheques, choses in action, and books and records pursuant to the Canadian *Bankruptcy and Insolvency Act*. This stay applies to all parties in interest, whether public, private, federal or state.

20.     This Order may be presented to any person, entity, or governmental agency as evidence of the Receiver's authority under this Order, and any and all third parties shall comply with any request of the Receiver and/or its designee to provide physical and electronic access to the Defendant's or the Receivership Property's mail and/or accounts.

21.     All rents, issues, profits, revenues, income and other payments which are now or hereafter become due with respect to all or any portion of the Receivership Property, whether

pursuant to oral or written agreements, shall be remitted by the account debtors directly to the Receiver; *provided, however,* TPG in its sole and absolute discretion may make direct payments to any farmers, vendors, or suppliers providing goods or services for the care and maintenance of TPG's Third Party Livestock and any such payments shall be setoff or recouped from any amounts allegedly owed to the Defendants or Receiver under any contracts with TPG.

22.     Upon request of the Receiver, the Defendants, the Receivership Property, their officers, directors, agents, employees or representatives are ordered to direct any person or entity liable for any payments to be paid to the Defendants and/or Receivership Property to direct said payment to the Receiver, with the exception for proceeds from the sale of Compeers' Collateral, as defined in the Complaint filed on March 18, 2025. Such direction shall be in writing and approved by the Receiver. Upon receipt of a copy of this Order, any and all third parties who are obligated to pay the Defendants and/or the Receivership Property any amounts are hereby directed to make such payment directly to the Receiver. Notwithstanding the foregoing, should any third party obligated to make payments to the Defendants and/or the Receivership Property, direct those payments to the Defendants and/or the Receivership Property rather than the Receiver, those payments shall be deemed to have been made payable to Receiver and shall be immediately turned over to the Receiver's custody and control by any person or party receiving the same on behalf of Receiver.  Any payments by TPG to the Receiver must be first applied to the expenses for the management and care of TPG's Third Party Livestock, and any such funds shall be deemed held in trust and used solely for such purposes, or returned to TPG; *provided, however*, the Receiver may retain any profit (after payment of expenses) arising from any services provided to TPG as Receivership Property.

23.     The Receiver shall not be bound by any contracts, agreements, understandings or other commitments of the Defendants or the Receivership Property (or any of their respective directors, equity owners, agents, employees, or other representatives) had, or may have, with third parties, whether oral or written. The Receiver may, by affirmative written ratification executed by the Receiver, agree to become bound to any such contracts, agreements, understandings, or other commitments and may agree to enter into any new or amended contracts, agreements, understandings, or other commitments. Nothing in this Order constitutes or shall be construed to constitute an assumption of any of the leases, contracts, or agreements currently existing with respect to the Receivership Property by the Receiver or a waiver by the Receiver of any default under any such lease, contract, or agreement; *provided, however,* unless otherwise ordered by the Court after notice to any owner of Third Party Livestock and a hearing, the Receiver shall continue to provide for the care and maintenance of Third Party Livestock.

24.     Utility companies and other providers of utility services, including, but not limited to electricity, gas, water, sewage, garbage, television/cable/satellite, internet, broadband, and telephone are directed not to demand additional deposits form the Receiver or discontinue service to any Receivership Property. The Receiver is authorized to open new customer accounts with each utility that provides services to the Receivership Property, or require the Defendants to name the Receiver as an authorized user of any of the existing utility accounts for the Receivership Property.

**Receiver's Liability**

25.     Neither the Receiver nor any agents or employees of the Receiver are liable for the Defendants' or the Receivership Property's debts, obligations or liabilities, whether arising out of contract, tort, or otherwise, or for the acts or omissions of any manager, agent, or employee of the

11

Defendants or Receivership Property. Any debts, obligations or liabilities incurred by the Receiver in the Receiver's capacity as Receiver shall be liabilities payable solely from the Receivership Property and not the liabilities of the Receiver. Further, neither the Receiver nor any agents or employees of the Receiver shall have any personal liability for any environmental liabilities arising out of or relating to the Receivership Property. The Receiver and its agents and employees are entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree.

26.    The Receiver is functioning as an "arm of the Court," and no party to this proceeding or any other person or entity is permitted to file a suit or summary proceeding (or assert any counterclaims in an action brought by the Receiver) against the Receiver or any employee or agent of the Receiver unless such party has obtained prior approval from this Court, which shall only be provided if this Court determines that the moving party is reasonably likely to succeed on the merits.

27.    The liability of the Receiver and any agent or employee of the Receiver is and shall be limited to the Receivership Property, and the Receiver (and any agent or employee of the Receiver) is not and will not be personally liable for any debts, obligations, or liabilities of the Defendants or related to or arising from the Receivership Property. In no event shall the Receiver, or any employee or agent of the Receiver, be liable to anyone for its good faith compliance with its duties and responsibilities or the exercise by the Receiver of the standing, power, and/or authority granted to the Receiver in this Order, nor shall the Receiver be liable to anyone for any such actions taken or omitted except upon a finding by this Court that it acted or failed to act as a result of gross negligence or reckless disregard of their duties.

**Advances to the Receiver**

12

28.     Within 30 days following appointment, the Receiver shall prepare a budget which shall estimate the costs to be incurred and cash to be generated during the course of the receivership, which budget shall be provided to the Plaintiff, Defendants, and TPG. The budget may include amounts which the Receiver may retain for a period of up to 120 days after the completion of the Receiver's work (or such longer or shorter period as the court may direct), to pay, as necessary, the costs of the final accounting, managing wind down issues and the preparation for, and appearance at, a hearing(s) on a motion(s) to obtain an order discharging the Receiver, etc. Funds held but which are ultimately unused by the Receiver shall be returned to the Plaintiff (or if advanced by TPG, returned to TPG) or be otherwise applied pursuant to order of the Court.

29.     If the Receivership Property, or the proceeds collected therefrom, or the proceeds collected by the Receiver from its operation of the Receivership Businesses are insufficient to pay the expenses of the receivership, including the Allowed Fees and Expenses (defined below), the Receiver may request that Plaintiff advance funds necessary to pay expenses of the receivership (a "Funding Request"). To the extent such sums are advanced by Plaintiff, they shall be secured with the full benefit of the original priority of the indebtedness evidenced by the applicable loan documents, and various credit facilities extended by Plaintiff to the Defendants. Interest on all sums so advanced shall accrue from the date such advances are made at the same rate of interest as the indebtedness in the applicable loan documents and shall be part of the amount due pursuant to the loan documents and Judgment. If such advances are made after a foreclosure sale, they shall also accrue interest and shall be part of the sum required to be paid to redeem from the foreclosure sale.  The Receiver may also request that TPG advance funds necessary to pay expenses for the management and care of TPG's Third Party Livestock, and any such advanced funds shall be deemed held in trust and used solely for such purposes, or returned to TPG.

30.     If the Plaintiff declines to fund or fails to fully fund a Funding Request within 3 (three) business days, the Receiver may seek permission of the Court for equitable relief if the Receiver reasonably believes that such funding is reasonably necessary to prevent unnecessary waste to the Receivership Property or Third Party Livestock or immediately stop work and seek its immediate discharge for good cause, which may be heard on an expedited basis.

**Monthly Reports**

31.     The Receiver shall file monthly reports with the Court within 15 days after the end of each full month period (the "**Monthly Operating Report**"), which shall include a master service list and the following information:

     a.    The activities of the Receiver since the last report;

     b.    Cash receipts and disbursements, including payments made to professionals retained by the receiver; receipts and dispositions of receivership property; and

     c.    Any other matters the Receiver deems appropriate.

32.     The Monthly Operating Reports shall be delivered to the parties on the master service list identified in Paragraph 30, including TPG, which delivery may be accomplished by email, mail, or electronic service on registered users through filing with the electronic court filing system.

33.     The Receiver and its professionals shall file monthly fee statements detailing any fees and expenses incurred by the Receiver in the Monthly Operating Reports. All parties to the within action shall thereafter have a period of seven (7) days within which time they may file a specific objection to the Monthly Operating Report, and with respect to the Receiver and its professionals' fees and expenses, such objection must identify a specific time entry or specific objections to multiple entries contained within such fee statements. All fees and expenses to which

no specific objection is made shall be deemed allowed at the conclusion of such seven (7) day period ("Allowed Fees and Expenses"). Any objection must identify with specificity all items in the Monthly Operating Report, including the fees and expenses, to which objection is made, the grounds for the objection, the facts supporting the objection and any legal authority therefore. The Receiver shall have fourteen (14) days from the filing of an objection to a Monthly Operating Report to respond to any such objection and may request that the Court set a hearing or that the Court rule on the written submissions. Objections, if any, that fail to identify a specific objection in conformance with the foregoing, or which are not timely made or heard in accordance with the foregoing, shall be deemed forever waived. Upon the Court's approval of any fees and expenses subject to objection, such fees and expenses shall be deemed Allowed Fees and Expenses.

**Compensation**

34.     Upon appointment, the Receiver shall be paid by Plaintiff an initial retainer of $25,000.00. The Receiver shall be compensated at its customary hourly rates, which are subject to reasonable increases in January of each year. In addition to the Receiver's fees, the Receiver shall be reimbursed for its reasonable fees and costs, including, without limitation, legal fees, travel expenses, selling costs, appraisal fees, fees for caretaking/security and/or locksmith services, parking and other business expenses associated with the Receivership. Use of personal automobiles may be billed at the rate allowed under the Internal Revenue Code.

35.     In addition to being compensated at its customary hourly rates, the Receiver may seek a success fee in connection with the sale or liquidation of some or all of the Receivership Property (other than Third Party Livestock, unless otherwise agreed in writing by the relevant owner), as applicable, which fee must be approved by the Court in connection with the authorization to conduct such sale or liquidation.

36.     The Receiver's compensation or reimbursement shall be disclosed in the Monthly Operating Reports filed with the Court. The Receiver may pay and reimburse itself with advances from the Plaintiff, funds in its control that are Receivership Property, or proceeds generated through the operation of the Receivership Businesses and/or the operation, sale, or liquidation of some or all of the Receivership Property (other than Third Party Livestock).  Nothing about this paragraph may be construed to grant or modify any powers of liquidation or sale to the Receiver beyond the enumerated powers previously identified in this Order.

37.     The approved fees and costs of the Receiver and its attorneys or other professionals employed by the Receiver pursuant to the authority granted to the Receiver under this Order or other applicable law, shall be a first and paramount surcharging lien against the Receivership Property (other than Third Party Livestock).

**Claims Process**

38.     The Receiver shall make a recommendation to the Court regarding a claims process appropriate to this particular receivership, which may include a recommendation that there be no claims process. The Receiver shall file its recommendation with the Court and deliver it upon all persons on the master service list. If there is no objection within (twenty-one) 21 days after filing the recommendation, the Court may enter an order adopting the recommendation by the Receiver.

**Cooperation & Parties' Duties**

39.     All third parties (including but not limited to Financial Institutions) in possession of assets subject to this Order are hereby ordered to turnover such assets to the Receiver within three (3) business days of receipt of a copy of this Order, which shall include receipt by mail, email, electronic service through filing with the electronic court filing system or personal service.

40.     Upon the Receiver's request, the Defendants, and their officers, directors, agents, and employees shall affirmatively cooperate and assist the Receiver to enable the Receiver to preserve, protect, and operate the Receivership Property, as applicable and on the terms set forth elsewhere herein, including without limitation, executing any document or instrument necessary to effectuate the transfer, sale or liquidation of the Receivership Property on the terms set forth elsewhere herein.

41.     The Defendants, their officers, directors, agents, employees, representatives, and owners shall immediately:

a.  Surrender to the Receiver physical possession of and control over all Receivership Property and assets of the Defendants including property belonging to or in the possession, custody or control of the Receivership Property, including, but not limited to, deposit accounts, securities accounts, promissory notes, deeds, mortgages, contracts, leases, checks, instruments, documents of title, accounts receivable, owned and leased real and personal property, owned and leased office space, intellectual property, technology, plans, drawings, specifications, manuals, formulae, owned and leased office equipment and supplies, computer software, intellectual property, owned and leased office equipment and supplies, computer software, computer stored data, all computers, all books, records and electronically stored data, and any and all information related to, necessary for, or otherwise utilized in the operation of the Receivership Property on the terms set forth herein;

b.  Provide to the Receiver all keys and other access devices, including passwords, codes, keycards, and any other such access or security devices, relating in any way to the Receivership Property, including offices, storage facilities, warehouses, and/or any property belonging to or in the possession, custody or control of the Receivership Property;

c.  Pay any outstanding balances owed to Defendants' counsel of record, the Halbach|Szwarc Law Firm and to continue to pay Defendants' counsel's ongoing legal expenses;

d.  Strictly comply with any and all direction of the Receiver to endorse and deliver to the Receiver any and all checks and other payments of money currently in or hereafter related to, arising from, or part of the Receivership Property; and

e.  Fully cooperate with and assist the Receiver so as to enable the Receiver to assume and discharge its duties under this Order and applicable law, including cooperating by voluntarily disclosing all financial, intellectual property, location of assets, and other information to the Receiver concerning the Receivership Property.

42.    The Defendants, their owners, officers, directors, agents, employees, representatives, and/or any other person, including consultants and advisors, or otherwise acting in concert with or on behalf of the Defendants (collectively "Enjoined Parties") are hereby enjoined from interfering in any way with the conduct of the Receiver's duties and obligations pursuant to this Order and under applicable law with respect to the management, control and operation of the Receivership Property. In addition, the Enjoined Parties shall cooperate with all requests of the Receiver.

43.    Without first obtaining leave of this Court, all of: (i) the Enjoined Parties; (ii) creditors of the Defendants and/or the Receivership Property, and other third parties; and (iii) all others acting on behalf of those identified in sections (i) and (ii) of this paragraph including, without limitation, sheriffs, marshals, other officers, deputies, servants, agents, employees, and attorneys are enjoined from:

  a. Commencing, prosecuting, continuing or enforcing any suit or proceeding in law, equity, or otherwise affecting the Defendants or any part of the Receivership Property in any forum other than this Court, other than seeking bankruptcy protection for the purposes of restructuring Defendants' debts or obligations; *provided, however,* TPG may take any action necessary to preserve and maintain its Third Party Livestock;

  b. Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or exercising control over or interfering with or creating or enforcing a judgment or lien upon any portion of the Receivership Property, wherever situated;

  c. Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or otherwise affecting the Receivership Property;

  d. Doing any act to interfere with the Receiver's taking control, possession, or management of the Receivership Property, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property;

  e. Engaging in any act to create, perfect, or enforce any lien against the Receivership Property, unless specifically authorized to by order of this Court;

     f.    Engaging in any act to collect, assess, or recover a claim against the Receivership Property that rose before the appointment of the Receiver; and

     g.    Exercising a set off of any debt owing to the Receivership Property that arose before the appointment of the Receiver against any claim against the Receivership Property; *provided, however*, third parties shall reserve all rights, claims, and defenses with respect to any debts or other obligations allegedly owing to any of the Defendants or the Receivership Property.

**Termination**

44.    The Receiver shall serve until the entry of an order by this Court terminating the receivership or appointing a substitute receiver. For good cause, the Receiver may file a motion seeking to discharge the Receiver and terminate its obligations under this Order on an expedited basis and with shortened notice to all interested parties, including any owners of Third Party Livestock. For purposes of this paragraph, good cause for expedited termination shall include, but is not limited to: (a) insufficient funds available for payment of the Receiver's fees and/or expenses; (b) insufficient funds available for payment of insurance premiums for insurance to cover Receiver; and/or (c) the unwillingness or inability of Plaintiff to fund the Receiver's fees.

**Instructions**

45.    At any time during the course of this Receivership, should the Receiver be uncertain as to its duties, responsibilities, or the appropriateness of any action proposed by the Receiver, the Receiver shall be permitted to request instructions from this Court, which request may be made either by motion or on an *ex parte* basis as appropriate. If a motion is filed, any such motion shall be treated as a non-dispositive motion under South Dakota Rules and shall be served and filed in accordance with the requirements set forth therein, subject to a request for expedited relief. Any responses and replies shall also be served and filed in accordance with the requirements of the South Dakota Rules respecting non-dispositive motions. Notwithstanding the foregoing, the Court intends its Order with respect to establishing this Receivership and appointing this Receiver to be

broadly construed to provide the Receiver with the power and authority necessary and appropriate to fulfill its duties as set forth herein and under applicable law.

46.    In the event the Enjoined Parties, or any of their respective officers, agents, employees, directors, owners and/or representatives, and/or any third party in receipt of this Order refuse to comply with the terms of this Order or the exercise of the Receiver's powers and authorization granted hereunder, such party shall be in violation of this Order. Upon such refusal to comply, the Receiver may file correspondence with the Court notifying the Court of non-compliance and seek issuance of an order directing the non-compliant party to appear at a hearing and show cause why they should not be held in contempt of court. The correspondence filed by the Receiver shall identify the applicable provisions of this Order that have been violated and the alleged failure(s) to comply.

**Non-Cooperation & Sheriff**

47.    In the event that the Defendants, their officers, agents, employees, directors and/or representatives, and/or any third party in custody, possession, or control of Receivership Property that are also in receipt of this Order refuse to comply with the terms of this Order or the exercise of the Receiver's powers and authorization granted hereunder, such party shall be in violation of this Order. Additionally, the Receiver may file correspondence with the Court notifying the Court of non-compliance and seek issuance of an order directing the non-compliant party to appear at a hearing and show cause why they should not be held in contempt of court. The correspondence filed by the Receiver shall identify the applicable provisions of this Order that have been violated and the alleged failure(s) to comply.

48.     Upon the Receiver's requests, the sheriff in any applicable county shall assist the Receiver in carrying out the duties of the Receiver, including accompanying Receiver while the Receivership Property is turned over to the Receiver.

**Other**

49.     The Court waives any requirement for the Receiver to post a bond.

50.     This Court shall have and retain jurisdiction over any disputes related to Receivership Property, the administration of the receivership, or relating to the Receiver, which jurisdiction shall survive termination of the receivership.

51.     Without limitation to any other provisions herein, TPG and its affiliates reserve all rights, claims, defenses, and interests with respect to the Receivership Property, the Defendants, and any contracts with the Defendants.

52.     This Order shall be effective immediately upon its entry for all purposes.


IT IS SO ORDERED.

Dated:                                                    _____
                                                          Eric C. Schulte
                                                          United States District Judge