UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COMPEER FINANCIAL, PCA, <br><br> Plaintiff, <br><br> v. <br><br> SUNWOLD FARMS, INC., <br> SUNTERRA FARMS IOWA, INC. and <br> LARIAGRA FARMS SOUTH, INC., <br><br> Defendants, <br><br> PIPESTONE MANAGEMENT II, LLC, <br><br> Receiver, <br><br> THE PORK GROUP, INC. AND TYSON FRESH MEATS, INC., <br><br> Intervenors. | 4:25-cv-04044 <br><br><br> **RECEIVER'S MOTION TO SHOW CAUSE** |

Receiver, Pipestone Management II, LLC, by and through its counsel of record, and pursuant to Paragraph 45 of this Court's Receivership Order, hereby moves the Court for an Order to Show Cause as to why Defendants and their counsel should not be held in contempt of court.

**FACTUAL BACKGROUND AND RECEIVER'S AUTHORITY**

On Friday, March 28, 2025, this Court entered an Opinion and Order Granting Plaintiff's Motion to Avoid Mandatory Mediation and Motion to Appoint a Receiver. *See* Doc. 31. This Court, on the same date, entered a separate Order Granting Compeer Financial, PCA's Application to Appoint a Receiver, which lays out the terms, provisions, obligations, and

1

instructions pertaining to the Receiver and the Receivership Property. *See* Doc. 30 (hereinafter "Receivership Order").

As of March 28, 2025, the Receiver has authority over the Receivership Property, which is defined in detail in the Receivership Order, "wherever situated." *Id.* ¶¶ 5, 8. Receivership Property includes "all tangible and intangible property used or useable in connection with the Defendants' businesses or income including . . . all cash on hand, bank accounts, credit card receipts, bank deposits, security deposits and other cash collateral; all books, records, accounts, and documents that in any way relate to the Defendants' businesses or income derived therefrom." *Id.* ¶ 8. The Receiver shall have the power:

a. To collect, control, manage, conserve, and protect the Receivership Property;

b. To incur and pay expenses incidental to the Receiver's exercise of the powers or otherwise in the performance of the Receiver's duties;

c. To operate and conduct the business of the Defendants' and/or any business constituting Receivership Property in the ordinary course of business, including . . . incurring and payment of expenses of the Receivership Property;
   . . .
e. To collect any information as to the assets, liabilities, equity in, business of, and intellectual property regarding or related to the Defendants, the Receivership Property, or operation of the Receivership Property, including, but not limited to request, any and all account statements, cancelled checks, deposit slips, or other banking records ("Banking Records") from National Bank of Canada, formerly Canadian Western Bank ("CWB") and any other financial institution with which any of the Defendants hold accounts (collectively "Financial Institutions");
   . . .
q. To investigate and pursue the Causes of Action and the check kiting referenced in the Complaint (the "Check Kiting"), or any suspicious transactions discovered as part of the investigation . . . .
   . . .
s. To access and control all bank accounts and financial accounts of the Defendants and/or the Receivership Property, together with all funds deposited therein;

t. To access, obtain, and utilize all electronic login and password information from any third party (including, but not limited to, utility providers, banking institutions, payroll processing services, etc.);
   . . .

    aa. To prevent the Defendants, the Receivership Property, or any officers, representatives, agents, successors, and assigns acting on their behalf from accessing or controlling the Receivership Property;

    . . .

    dd. To take any and all actions the Receiver deems reasonable and appropriate to prevent waste of the Receivership Property and to preserve, secure, manage, maintain, and safeguard the Receivership Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

Doc. 30 ¶ 11.

Further, "upon the Receiver's request, the Defendants, and their officers, directors, agents, and employees shall affirmatively cooperate and assist the Receiver to enable the Receiver to preserve, protect, operate, sell, and liquidate the Receivership Property . . . ." *Id.* ¶ 39. "The Defendants, their officers, directors, agents, employees, representatives, and owners shall immediately: preserve and expressly refrain from destroying any of the Defendants' documentation, books, records, electronically stored data, and any and all information related to, necessary for, or otherwise utilized in the operation of the Receivership Property." *Id.* ¶ 40(a). Defendants were further ordered to "surrender to the Receiver physical possession of and control over all Receivership Property and assets of the Defendants, including . . .computer software, computer stored data, all computers, all books, records and electronically stored data, and any and all information related to, necessary for, or otherwise utilized in the operation of the Receivership Property[.]" *Id.* ¶ 40(b). Defendants were ordered to "fully cooperate with and assist the Receiver so as to enable the Receiver to assume and discharge its duties under this Order and applicable law." *Id.* ¶ 40(e).

"The Defendants, their owners, officers, directors, agents, employees, representatives, and/or any other person, including consultants and advisors, or otherwise acting in concert with or on behalf of the Defendants (collectively "Enjoined Parties") are hereby enjoined from interfering in any way with the conduct of the Receiver's duties and obligations pursuant to this

3

Order and under applicable law with respect to the management, control and operation of the Receivership Property." *Id.* ¶ 41. The Defendants and Enjoined Parties were further enjoined from "doing any act to interfere with the Receiver's taking control, possession, or management of the Receivership Property." *Id.* ¶ 42(d).

The Receivership Order further provides that if any "Enjoined Parties, or any of their respective officers, agents, employees, directors, owners and/or representatives, and/or any third party in receipt of this Order refuse to comply with the terms of this Order or the exercise of the Receiver's powers and authorization granted hereunder, such party shall be in violation of this Order." Doc. 30 ¶ 45.

## **LEGAL AUTHORITIES**

The district court has civil contempt power to "effectuate compliance with a court's order or process; and to compensate individuals from harm incurred by noncompliance." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989). The Eighth Circuit has explained that the judiciary's civil contempt power should only be used "sparingly" and should not be used "to vindicate the court's authority or to punish the contemnor, but . . . to make reparation to the injured party, restoring that party to the position it would have held had the court's order been obeyed." *Id.*

"Federal courts have the broad power to coerce compliance with their orders through civil contempt." *FTC v. Vacation Communs. Group, LLC*, 2013 U.S. Dist. LEXIS 133531, at *4 (D. Fla. Sept. 18, 2013) (citing *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (analyzing a Receiver's Motion to Show Cause why defendant should not be held in civil contempt). "The district court has wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances." *Id.* (internal citation omitted).

"Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *FTC v. Neiswonger*, 580 F.3d 769, 774 (8th Cir. 2009) (internal quotation omitted).

"A party moving for civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chi. Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). If the moving party meets its initial burden, "the burden . . . shift[s] to the [alleged contemnors] to show an inability to comply," which means (1) "they were unable to comply," (2) the inability to comply "was not self-induced," and (3) that "all reasonable efforts" were made in good faith to comply with the Court's order. *Id.* at 506.

> It is well-settled that a court's contempt power extends to non-parties who have notice of the court's order and the responsibility to comply with it. The Supreme Court has long recognized that a person, "not a party to the suit, [may be] guilty of contempt for violation of an order of that court, made in such suit, and imposing a fine for such contempt." *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 325, 48 L. Ed. 997, 24 S. Ct. 665 (1904). And Judge Learned Hand explained that, while no court can make a decree that binds "the world at large," a non-party "may be punished if he either "abets the defendant or [is] legally identified with him." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930).
>
> More recently, this court has held that "a nonparty may be held in contempt where the nonparty aids or abets a named party in a concerted violation of a court order." *Independent Fed'n of Flight Attendants v. Cooper*, 134 F.3d 917, 920 (8th Cir. 1998). We said in *Cooper* that the "essence" of this rule is that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abetters, although they were not parties to the original proceeding." *Id*.

*Id.* at 507; *see also SEC v. Beasley*, 2023 U.S. Dist. LEXIS 230795, at *30-31 (D. Nev. Dec. 28, 2023) (applying same clear and convincing evidence standard to motion to show cause brought by Receiver against non-parties to action); Fed. R. Civ. P. 71 (permitting enforcement of an order against a nonparty).

5

## ALLEGED REFUSAL TO COMPLY WITH RECEIVERSHIP ORDER

Under the Receivership Order, if the Enjoined Parties refuse to comply with the Order, "the Receiver may file correspondence with the Court notifying the Court of non-compliance and seek issuance of an order directing the non-compliant party to appear at a hearing and show cause why they should not be held in contempt of court." Doc. 30 ¶ 45. The Receiver shall identify "the applicable provisions of this Order that have been violated and the alleged failure(s) to comply." *Id.*

Here, the Receiver reasonably believes that the provisions outlined above have been violated. In particular, the Receiver is concerned that Defendants, their respective officers, agents, employees, directors, owners and/or representatives, and/or any third party in receipt of this Order, may have engaged in acts to interfere with the Receiver's taking control, possession, or management of the Receivership Property, including access to Defendants' accounting software and historical financial data. As set forth in the Affidavit of Hannah Walkes, filed herewith, the Receiver has been unable to retrieve data in Defendants' Citrix Activity Manager cloud-based software. When the Receiver logged into the account on the morning of March 31, 2025, it could not access accounts receivable, accounts payable or general ledger information. While working in the account platform, the Receiver received a notice that access to the platform was denied. After re-establishing connection to the accounting platform, data that was present previously, such as bank reconciliations, was missing.

Despite attempts to communicate with Defendants, their agents, and representatives, to determine who or what caused an interference with the Receiver's access, Defendants have thus far failed and refused to restore the Receiver's access to the accounting platform and the data contained therein. Receiver now has concerns that the accounting data may be destroyed or

manipulated, either by Defendants, their agents and representatives, or non-parties who are aware of this Court's Receivership Order, which is expressly prohibited by the Court's Receivership Order.

Access to Defendants' accounting software is critical for the Receiver to take appropriate control and possession of the Receivership Property, to pursue its duties and obligations outlined in paragraph 11 of the Court's Receivership Order (relevant duties identified above), and to preserve and protect the Receivership Property. It cannot control the Receivership Property, operate Defendants' businesses in the ordinary course of business, or pay expenses related to Defendants' businesses without access to the financial reports and accounting data. It cannot investigate Check Kiting or suspicious activity without access to the accounting data.

Furthermore, Defendants, their officers, directors, agents, and employees were specifically ordered by this Court to affirmatively cooperate with the Receiver, which they have not yet done. *See* Doc. 30 ¶ 39. Receiver diligently raised this accounting access issue in the morning on March 31, 2025, and access has not yet been restored. The Receiver has requested "Admin" access to the software, but that access has not yet been given, and the Receiver understands that the "Admin" access is controlled by persons or entities in Canada. Defendants were further ordered to preserve and refrain from destroying any of Defendants' documentation, books, records, and electronically stored data. *Id.* ¶ 40.

If a Court sets a hearing, the Receiver will be prepared to establish further factual background on its communications with Defendants, the timeline, and steps that the Receiver's IT and Accounting departments have taken to comply with this Court's Order. Agents of Defendants have indicated to the Receiver that the accounting software may be a joint system,

and some of the information or data within the software is owned by Canadian entities. However, the Receiver was previously told that the data had been separated.

## **CONCLUSION**

Receiver's Motion to Show Cause is being brought to the Court's attention under an expedited basis in light of its concern that pertinent financial and accounting data that is Receivership Property may be manipulated or destroyed. Receiver reserves the right to provide further facts or analysis to the Court as it learns information that it believes may be necessary for the Court to address the issues identified in this Motion.

Under Paragraph 45 of this Court's Receivership Order, Receiver therefore respectfully requests that the Court issue an Order directing Defendants and their counsel of record to appear at an expedited hearing and show cause why they should not be held in contempt of court.

Dated at Sioux Falls, South Dakota, this 31st day of March, 2025.

CADWELL SANFORD DEIBERT & GARRY LLP

By  /s/ Claire E. Wilka
James S. Simko
Claire E. Wilka
200 East 10th St., Suite 200
Sioux Falls SD 57104
jsimko@cadlaw.com
cwilka@cadlaw.com
(605) 336-0828
Attorneys for Pipestone
Management II, LLC

*Electronically Filed*